# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to
Civil File Nos. 17-2832, 17-4613,
17-4614, 17-4615, 17-4616, 17-4617,
17-4618, 17-4619, 17-4622, 17-4943,
17-4944, 17-4945, 17-4947, 17-5046,
18-1562, 18-1565, 18-1572, 18-1573,

**MEMORANDUM OF LAW & ORDER**

Carolyn G. Anderson, Brian C. Gudmundson, Hart L. Robinovitch, and Michael J. Laird, Zimmerman Reed LLP, Plaintiffs' Interim Co- Lead and Liaison Counsel; Mark M. O'Mara, Alyssa J. Flood, and Caitlin Reese, O'Mara Law Group, and Mark J. Geragos and Benjamin J. Meiselas, Geragos & Geragos, APC, Plaintiffs' Interim Co-Lead Counsel; Daniel C. Hedlund and Michelle J. Looby, Gustafson Gluek PLLC, Plaintiffs' Executive Committee Chair; Richard M. Hagstrom and Anne T. Regan, Hellmuth & Johnson, PLLC, Roxanne Barton Conlin, Roxanne Conlin & Associates, PC, and Francois M. Blaudeau, W. Lewis Garrison, Jr., and James F. McDonough, III, Heninger Garrison Davis, LLC, Plaintiffs' Executive Committee; and T. Ryan Langley, Hodge & Langley Law Firm, P.C., Michael Fuller, Olsen Daines PC, Brandon C. Fernald, Fernald Law Group LLP, Bonner C. Walsh, Walsh PLLC, Alfred M. Sanchez, and Orin Kurtz, Gardy & Notis, LLP, Counsel for Plaintiffs and the Proposed Class.

Douglas P. Lobel, David A. Vogel, and Jeffrey M. Gutkin, Cooley LLP; Carolyn J. Fairless, Michael T. Williams, Andrew Unthank, and Theresa Wardon Benz, Wheeler Trigg O'Donnell LLP; and William A. McNab and David M. Aafedt,

1

Winthrop & Weinstine, P.A., and Jerry W. Blackwell, Blackwell Burke P.A., Counsel for Defendant CenturyLink, Inc. and the Proposed Intervenors.

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards [Docket No. 731] and Plaintiffs' Motion for Final Approval of Class Action Settlement [Docket No. 832]. A final fairness hearing was held on November 19, 2020. Because the Settlement is fair, reasonable, and adequate and grants substantial benefits to the Class and because the attorneys' fees, expenses, and class representative service awards requested are reasonable and justified, the Court grants both motions.

## II.    BACKGROUND

### A.    Formation of the MDL and Allegations in the Complaint

This multidistrict litigation ("MDL") was opened on October 10, 2017. On January 4, 2018, this Court appointed Zimmerman Reed LLP, O'Mara Law Group, and Geragos & Geragos as Co-Lead Counsel, and established a Plaintiffs' Executive Committee consisting of Gustafson Gluek PLLC, Henninger Garrison Davis LLC, Hellmuth & Johnson, PLLC, and Roxanne Conlin & Associates, LLC (collectively, "Plaintiffs' Counsel"). ([Docket No. 25] Pretrial Order No. 2.)

On February 15, 2018, Plaintiffs filed the Consolidated Class Action

Complaint ("CCAC") against Defendant CenturyLink, Inc. ("CenturyLink").

[Docket No. 38]  The CCAC is brought by 33 named Plaintiffs.  ([Docket No. 38]

CCAC; [Docket No. 294] Order Dismissing Five Plaintiffs.)  Each named Plaintiff

alleges that he or she purchased internet and, in some cases, telephone and/or

television services from "CenturyLink."  (CCAC ¶¶ 129-413.)  Each Plaintiff

asserts sales, billing, or quality issues.

The CCAC asserts 8 claims on behalf of a nationwide class: Count 1:

Violations of 47 U.S.C. §§ 201, et seq. and 47 C.F.R. § 64.2401 (on behalf of all

class members); Count 2: Breach of Contract (on behalf of all class members);

Count 3: Breach of Duty of Good Faith and Fair Dealing (on behalf of all Arizona,

Minnesota, North Carolina, Oregon, and Wisconsin subclass members); Count 4:

Violation of State Consumer Protection Statutes (on behalf of all Colorado,

Minnesota, Florida, Washington, Oregon, Missouri, New Mexico, Iowa, Nevada,

and Idaho subclass members); Count 5: Violation of the Louisiana Unfair Trade

Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51-1401-1430

("LUPTA") (on behalf of all class members); Count 6: Negligent

Misrepresentation (on behalf of all class members); Count 7: Fraudulent

Inducement (on behalf of all class members); and Count 8: Unjust Enrichment

(on behalf of all class members).

Overall, the CCAC claims that "CenturyLink routinely promised low

prices during the sales process only to charge higher amounts and add

unauthorized charges during billing." (CCAC ¶ 1.) It asserts that CenturyLink

relied on a system of customer databases that lacked the capacity to track quoted

prices, on a sales methodology designed to encourage aggressive sales tactics

such as promising undeliverable prices in order to secure customers, and based

on undisclosed exceptions, conditions, exclusions, and hidden fees. (CCAC ¶¶

68, 70, 81-84, 87, 92-95, 99-100, 108.) Through these tactics, CenturyLink

increased its customer base but charged many customers more than they were

promised. (Id. ¶¶ 80, 83.) When customers tried to cancel their services based on

overpayments, CenturyLink often charged early termination fees. (Id. ¶¶ 84,

102, 116.)

### B.    Pre-Certification Motion Practice and Discovery

On April 2, 2018, ten subsidiaries of CenturyLink filed Defendant's

Affiliates' Motion to Intervene for the Limited Purposes of Moving to Compel

Arbitration and Enforce Class-Action Waivers and to Join in Defendant

CenturyLink, Inc.'s Motion for Temporary Stay of Discovery. [Docket No. 80]

4

The subsidiaries moved for intervention for the limited purpose of moving to enforce their customer contracts with the named Plaintiffs to require arbitration of Plaintiffs' claims and to effectuate the class-action waivers.

On April 28, 2018, CenturyLink and the Proposed Intervenors' filed a Motion to Compel Arbitration and Enforce Class-Action Waivers. [Docket No. 122] They requested that the Court stay litigation of all arbitrable claims so that Plaintiffs can initiate arbitration and enforce the class-action waiver and bar any discovery or claims that assert any rights under Federal Rule of Civil Procedure 23.

On April 28, 2018, CenturyLink filed its Alternative Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). [Docket No. 132] CenturyLink requested that, under Federal Rule of Civil Procedure 12(b)(2) the Court dismiss it as a Defendant based on lack of personal jurisdiction, under Rule 12(b)(6) the Court dismiss it for failure to state a claim because there are no allegations to support piercing the corporate veil, and, under Rule 12(b)(6) dismiss Count 1 of the Complaint for failure to state a claim upon which relief can be granted.

The Court permitted discovery related to the motions to compel arbitration and to dismiss. [Docket No. 145] CenturyLink issued 730 written discovery

requests and deposed 25 Plaintiffs.  ([Docket No. 734] Gudmundson Attorney

Fee Decl. ¶ 30.)  Plaintiffs served CenturyLink with requests for production of

documents and interrogatories and reviewed tens of thousands of pages of

documents.  (Id.)  Plaintiffs took seven depositions of CenturyLink.  (Id.)  The

parties fully briefed all three of CenturyLink's motions, including filing a sur-

reply and sur-sur-reply with regard to the motion to compel arbitration.

On May 20, 2019, the parties mediated before retired Judge Layn Phillips,

former District Court Judge for the Western District of Oklahoma.  Before the

mediation, they submitted extensive mediation statements and proposed

settlements.  They also submitted all briefing on the pending motions.  ([Docket

No. 470] Philips Decl. ¶ 6.)  The parties mediated in person on May 20, 2019 and

continued to mediate remotely through May 24.  (Id. ¶ 7.)  On May 24, the parties

agreed to the terms of a settlement and signed an initial term sheet.  (Id. ¶ 7.)

Acceptance of the terms was contingent on confirmatory discovery by Plaintiffs

to corroborate CenturyLink's representations made during the mediation.  (Id.

¶¶ 7-8.)

Consideration of the three pending motions was stayed once the parties

announced their tentative settlement of the consumer cases on June 7, 2019.

[Docket No. 407]  Plaintiffs then pursued several months of confirmatory

discovery regarding the size and scope of damages, consisting of 39

interrogatories, 8 requests for admission, a Rule 30(b)(6) deposition, and

observation of the deposition of CenturyLink expert David Hall conducted by

the Office of the Minnesota Attorney General.  ([Docket No. 469] Gudmundson

Decl. ¶¶ 6-7.)

C.    **Settlement Terms**

On January 22, 2020, the Court held a hearing regarding the motion for

preliminary approval of the settlement.  [Docket No. 524]  On January 24, 2020,

the Court issued the Preliminary Approval Order.  [Docket No. 528]  The Court

conditionally appointed Zimmerman Reed LLP, O'Mara Law Group, and

Geragos & Geragos APC as Settlement Class Counsel ("Class Counsel").

(Preliminary Approval Order ¶ 8.)

1.    **Settlement Class**

The Court provisionally certified the following Settlement Class:

The Settlement Class is provisionally certified as a class of all
persons or entities in the United States who are identified by
CenturyLink as a residential or small business customer and who,
during the Class Period, had an account for local or long distance
telephone, internet, or television services with one or more of the
Operating Companies.  Excluded from the class are the Court, the

7

officers and directors of CenturyLink, Inc. or any of the Operating
Companies, and persons who timely and validly request exclusion
from the Settlement Class. The Class Period is January 1, 2014 to
date of entry of this Order.

(Preliminary Approval Order ¶ 7.)

### 2.    Monetary Award

The Settlement creates a minimum of $18.5 million in settlement funds. $3

million of the fund will be placed in a Notice and Administration Fund. ([Docket

No. 469] Gudmundson Decl. in Support of Preliminary Approval, Ex. A,

Settlement Agreement and Release ("SAR") §§ 1.25, 2.2.1.) If the costs for

administration exceed $3 million, CenturyLink will pay half of any additional

costs for the next million. (Id.) $15.5 million will be placed in a non-reversionary

Primary Fund that will fund Settlement Class Members' timely and valid claims,

Settlement Class Representative Service Payments, and the Fees, Costs, and

Expense Award. (Id. §§ 1.30, 2.2.2-2.2.5.)

The Settlement permits Class Representatives to apply to the Court for an

award of a Service Payment not to exceed $2,500 per Class Representative. (SAR

§ 2.2.3.)

Plaintiffs' Counsel may request fees up to 33 1/3% of the total value of the

Settlement Funds plus reasonable costs and expenses, to be paid from the

Primary Fund.  (SAR § 2.2.4.)  The finality and effectiveness of the Settlement are

not dependent on the Court awarding Plaintiffs' Counsel any particular amount

of fees and costs.  (Id.)  The Net Primary Fund is defined as the Primary Fund

reduced by the Initial Payments, which consist of Service Payments and any Fee,

Cost, and Expense Award awarded by the Court to Plaintiffs' Counsel.  (Id. §§

1.21, 1.24.)

### 3.    Claim Types

The Settlement provides compensation for Settlement Class Members who

assert that they paid CenturyLink for unauthorized, undisclosed, or otherwise

improper charges and were not previously compensated for their overpayment,

including for the following reasons: (1) promised one rate during the sales

process but paid a higher rate; (2) paid for services or equipment not ordered; (3)

paid for nonexistent or duplicate accounts; (4) paid for services ordered but

never delivered or not delivered as promised; (5) paid for services that were

previously and appropriately cancelled; (6) paid for equipment that was

previously returned; (7) paid for an unwarranted early termination fee; (8)

incurred costs resulting from an account being improperly sent to collections.

(SAR, Ex. 7, Claim Form at 2-3.)

9

Class Members may make one of two types of claims: 1) a Flat Payment Claim for $30 times the Pro Rata Multiplier, which requires no documentation beyond the Claim Form or 2) a Supported Document Claim, for which Claimants will receive 40% of the amount of their documented overpayments multiplied by the Pro Rata Multiplier.  (SAR § 1.19, 3.2.1, 3.2.2, 3.3.3.)  For either type of claim, the claimant must timely submit a Claim Form to the Settlement Administrator.  (Id. §§ 1.6, 5.2; SAR, Ex. 7, Claim Form.)

The Settlement Administrator will calculate the Pro Rata Multiplier by dividing the Net Primary Fund by the total amount claimed.  (SAR § 3.3.1.)  The total amount claimed is defined as all valid and timely Supported Document Claims multiplied by the Litigation Risk Factor plus all Flat Payment Claims.  (Id. § 3.2.4.)

### 4.    Business Practices

The Settlement also requires CenturyLink to certify its compliance for three years with certain changes to its business practices in all states in which it does business.  (SAR § 2.1.)  Specifically, CenturyLink agrees to not make any knowingly false statements or omissions of material fact with regard to its sale of internet, telephone, or television service in the United States; to not intentionally

10

fail to disclose all material terms or conditions of its offer when selling residential or small business internet, telephone, or television services; to not knowingly charge any U.S. consumer any amount greater than disclosed to the consumer (excluding taxes) unless the consumer orders additional services or stops meeting restrictions or conditions disclosed at the time of sale; to not fail to honor any price quoted at the time of sale on the basis of a condition not disclosed at the time of sale; and to implement processes and training designed to ensure that it discloses to U.S. consumers, at the time of sale, the information required by state law and the Settlement Agreement.  (Id. §§ 2.1.1-2.1.3.)

Additionally, CenturyLink agrees that, when contacted by a Settlement Class Member regarding negative credit issues, it will take reasonable steps to reverse adverse credit reporting on improper overcharges that are the subject of a valid and timely Claim in this Settlement.  (SAR § 2.1.5.)

### 5.    Class Notification Procedures

The Settlement Agreement provided two methods of notice for current CenturyLink customers: Bill Notice (electronic or paper) and through the CenturyLink website.  (SAR §§ 4.3.1, 4.3.2, 4.3.3.)

For Settlement Class Members who are former CenturyLink customers, the Settlement Agreement required Email Notice or Postcard Notice.  (SAR § 4.4.) The Settlement Administrator also was required to issue a Publication Notice, under which ads will appeared for four weeks using the Google Display Network, which reaches millions of websites, news pages, blogs, and Google sites, and creating "keyword searches" that display ads when users search specific keywords in common search engines.  (SAR § 4.5; SAR, Ex. 6; [Docket No. 471] First Wheatman Decl. ¶ 20.)

Beginning March 23, 2020, CenturyLink sent notice to Class Members who are current customers through email or mail with their billing statements. ([Docket No. 839] Dawson Decl. ¶¶ 5-6; [Docket No. 838] Beckman Decl. ¶¶ 4-6.) (With the exception that the Settlement Administrator sent notice to a small number of pre-paid internet customers.  ([Docket No. 836] Stinehart Decl. ¶¶ 9–11; Beckman Decl. ¶ 8.))  CenturyLink posted notice on the Legal section of its website and on its customers' "My Account" page.  (Beckman Decl. ¶¶ 10-11.) Additionally, the Settlement Administrator calculates that direct Class Notice reached an estimated 12,601,054 out of 13,265,240 Class Members who are former customers or 94.99%.  (Stinehart Decl. ¶ 17.)

The Settlement Administrator hired a media company that conducted

digital media and earned media campaigns.  ([Docket No. 837] Wheatman Decl.

¶¶ 14-15.)  The Settlement Administrator used Google Display Network and

Google AdWords and Bing Microsoft Advertising to display advertisements

when users searched specified, related terms or phrases.  (Id. ¶ 15.)  These ads

generated 4,873,359 gross impressions.  (Id.)  On March 20, 2020, the Settlement

Administrator distributed a nationwide press release on PR Newswire's US1

news circuit reaching 5,400 traditional media outlets and 4,000 national websites.

(Id. ¶ 16.)  This generated 140 total pickups of the full text of the release, which

resulted in a total potential audience of 87 million.  (Id.)

**D.    Notice and Administrative Costs**

As of November 5, 2020, $3.823 million had been spent on Notice and

Administration.  ([Docket No. 835] Gudmundson Decl. ¶ 3.)  The Settlement

Administrator estimates that the current and remaining administration costs will

be $3.92 million.  (Id. ¶ 4.)  CenturyLink also spent approximately $37,500

effecting notice to Class Members who are current CenturyLink customers and

do not receive electronic billing.  (Dawson Decl. ¶ 5.)

**E.    Claims, Objections, and Opt Outs**

Settlement Class Members have submitted 115,240 timely Flat Payment claims and 2,213 timely Supported Document claims.  (Stinehart Decl. ¶ 26.) There were 369 claimants that did not elect either the Flat Payment or Supported Document Claim type on their claim forms; these claims will proceed through the process for curing claim deficiencies.  (Id.)  There have been 12,325 timely opt-out requests, 11,929 of which were submitted by clients of the law firm of Keller Lenkner LLC ("Keller"), which seeks to represent these individuals in individual arbitration against CenturyLink.  (Id. ¶ 18.)  Eight Class Members have objected.  (Id. ¶ 19.)

The estimated total value of the Flat Payment Claims prior to applying the pro rata multiplier, $30 times 115,240 claims, is approximately $3,457,200. (Stinehart Decl. ¶ 26.)  The Document Supported Claims are subject to a final accounting and completion of any claim deficiency correction efforts and cannot be accurately estimated at this time.  (Id.)  Plaintiffs assert that, assuming an average value of $1,000, which is far higher than likely, the value of the 2,213 Supported Document Claims would be $2,213,000.  Therefore, even if all of the submitted Flat Payment and Supported Document Claims are deemed fully timely and valid; the Primary Fund pays half of the notice and administration

costs between $3 and $4 million as required under the Settlement Agreement; and the Court grants the full amount requested for attorneys' fees ($6,166,667), expenses ($263,671.46), and Class Representative Service Payments ($85,000), this would amount to approximately $12.7 of the $15.5 million Primary Fund. Thus, a positive multiplier will be added to all claims submitted by Class Members.

### F.    Current Motions

Plaintiffs now move for final approval of the Class Action Settlement with CenturyLink. Plaintiffs' Counsel separately requests that the Court award them attorneys' fees of $6,166,667 and reimbursement of expenses in the amount of $263,671.46, and award class representative service awards of $2,500 for 34 individuals. CenturyLink and the proposed intervenors (CenturyLink's operating companies) have filed a memorandum in support of the motion to approve the settlement.

## III.    APPROVAL OF THE SETTLEMENT

### A.    Standard for Approval of a Rule 23 Class Action Settlement

A court may approve a Rule 23 class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court must consider whether

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Id.

The decision to approve a settlement agreement "is committed to the sound discretion of the trial judge." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975) (citation omitted). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." Id. (citations omitted).

At the stage of final approval,

> [a] district court is required to consider four factors in determining
> whether a settlement is fair, reasonable, and adequate: (1) the merits
> of the plaintiff's case, weighed against the terms of the settlement;
> (2) the defendant's financial condition; (3) the complexity and
> expense of further litigation; and (4) the amount of opposition to the
> settlement. The district court need not make a detailed investigation
> consonant with trying the case; it must, however, provide the
> appellate court with a basis for determining that its decision rests on
> well-reasoned conclusions and is not mere boilerplate. The most
> important consideration in deciding whether a settlement is fair,
> reasonable, and adequate is the strength of the case for plaintiffs on
> the merits, balanced against the amount offered in settlement.

In re Wireless Tele. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932-33 (8th Cir.

2005) (citations omitted).

> [A] strong public policy favors agreements, and courts should
> approach them with a presumption in their favor. Although a trial
> court must consider the terms of a class action settlement to the
> extent necessary to protect the interests of the class, [j]udges should
> not substitute their own judgment as to optimal settlement terms for
> the judgment of the litigants and their counsel.

Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148–49 (8th Cir. 1999) (citations

omitted).

## B.    Adequacy of Representation

The Class Representatives share the same interests as absent Class

Members, assert the same claims, and share the same injuries. Each Class

Representative seeks to recover the amounts they paid due to CenturyLink's

allegedly centralized improper sales and billing practices.

17

Class Counsel are experienced and qualified.  They have diligently and
aggressively represented Class members, responding to multiple substantive
motions that raised substantial threats to the viability of Plaintiffs' cases and
negotiating a meaningful settlement.

### C.    Whether the Settlement Was Negotiated at Arm's Length

The Settlement was reached through arm's length negotiations in which
the parties were represented by experienced counsel and engaged in extensive
negotiations with an experienced mediator at a stage in the litigation in which
the parties understood the strengths and weakness of their case.  The parties had
the opportunity to test and refine their legal theories through discovery and
vigorous motion practice related to CenturyLink's three initial motions.  The
parties negotiated extensively in consultation with retired Judge Layn Philips,
who is an experienced judge and mediator.  (See Phillips Decl. ¶¶ 1-5.)  The
Settlement was not finalized until thorough confirmatory discovery was carried
out.

### D.    Whether the Relief Is Fair, Reasonable, and Adequate

The merits of Plaintiffs' case weighed against the terms of the Settlement
and the complexity and expense of further litigation weigh in favor of approval.
Plaintiffs faced serious obstacles to their claims based on the issues raised in

CenturyLink's motion to dismiss and motion to compel arbitration and enforce

the class-action waiver.  There was evidence that every Named Plaintiff, save

one, had agreed to mandatory arbitration and a class-action waiver.  If Plaintiffs'

claims survived the pending motions, class certification would be a significant

hurdle given CenturyLink's argument that Plaintiffs do not allege a single

concrete policy or practice that led to liability but rather a constellation of factors

that led to various types of liability for different billing and sales issues.  Finally,

even if Plaintiffs were successful, the costs of merits discovery and costs and

risks of continued litigation in such a large, complex case would be significant.

The Settlement provides significant monetary and nonmonetary benefits.

The Settlement Agreement requires CenturyLink to take measures to ensure that

customers receive accurate and clear billing information, to prevent overcharging

customers, and to ensure any arbitration provisions are conspicuous.

Confirmatory discovery showed that CenturyLink provided an average of

$68 to resolve escalated and unresolved customer complaints over the Class

Period.  ([Docket No. 469] Gudmundson Decl. in Support of Preliminary

Approval ¶ 8(i).)  If all 17.2 million Settlement Class Members were overcharged

by the average reimbursement amount of $68 and none were compensated by

CenturyLink, the total recoverable damages if Plaintiffs completely prevailed in this MDL would be $1.2 billion.  However, as confirmatory discovery also showed, it is likely that only a small percentage of the Class possesses valid, uncompensated claims against CenturyLink.  (See id. ¶ 8(f), (j), (k).)  Under the Settlement Agreement, Plaintiffs will receive cash awards, rather than coupons, and are given the choice of recovering a percentage of their actual damages if they provide documentation for their claim or  receiving a non-nominal monetary amount.  Now that the claims have been submitted, it appears that Class Members who made a claim with no supporting documentation will receive approximately $45 and those who supported their claims will receive approximately 60% of their claimed damages.  This is a substantial benefit given the risks and costs of continued litigation.

### E.    CenturyLink's Financial Condition

The parties do not address CenturyLink's financial condition, but there is no indication that CenturyLink would have any trouble paying the Settlement Fund.

### F.    Opposition to the Settlement

### 1.    Overall Level of Opposition

There were 8 objectors out of 17.2 million Class Members, demonstrating that there is little opposition to the Settlement.

### 2.    Heidi Romano Objection

Heidi Romano objects to the fact that there is litigation against CenturyLink because she has "never experienced any wrongdoing on the part of CenturyLink." ([Docket No. 835] Gudmundson Decl., Ex. A, Romano Objection at 2.) She asks to "end this lawsuit as soon as possible" and voices no objection to the Settlement itself. Thus, Romano does not actually object to any term of the Settlement, and her objection is overruled.

### 3.    Lonnie Sparks Objection

Lonnie Sparks' entire objection states: "I will stay in the Settlement and object to it before June 23, 2020;" and "My claim is CenturyLink misrepresented their representation overcharged and credit reporting falsely." (Gudmundson Decl., Ex. B, Sparks Objection.)

Sparks expresses frustration with CenturyLink's billing, but does not object to anything about the Settlement itself. The Settlement appears to address his complaints by giving him the option of recovering approximately $45 for a

Flat Payment claim with no documentary evidence or approximately 60% of his

claim with documentation.  The objection does not explain why participating in

the Settlement or opting out to independently pursue a larger or different

recovery would be insufficient to satisfy his concern.  Sparks' objection is

overruled.

### 4.    Ron Koehler Objection

Ron Koehler states that he owns a small business and complains the

business's CenturyLink bill is never for the same amount and keeps increasing in

small increments.  (Gudmundson Decl., Ex. C, Koehler Objection.)  He also states

that he cannot open his online bills because CenturyLink's system tells him that

it does not recognize his password, username, or email address.  (Id.)  He does

not object to any specific part of the Settlement.

Koehler expresses frustration with CenturyLink's billing, but does not

object to anything about the Settlement itself.  The Settlement appears to address

his complaints by giving him the option of recovering approximately $45 for a

Flat Payment claim with no documentary evidence or approximately 60% of his

claim with documentation.  The objection does not explain why participating in

the Settlement or opting out to individually pursue a larger or different recovery

would be insufficient to satisfy his concern.  Koehler's objection is overruled.

### 5.      Gordon Pumphrey, Sr. Objection

Gordon Pumphrey, Sr.'s complete objection states: "I have much larger

issue with CenturyLink than a paltry $30.00 approx. settlement.  Do I object to

the proceedings.  You bet. Vigorously."  (Gudmundson Decl., Ex. D, Pumphrey,

Objection.)

Pumphrey is unhappy with CenturyLink, claims that CenturyLink

overcharged him, and appears to claim that his damages are greater than $30.

The Settlement accommodates Pumphrey's claim that his damages are greater

than $30 by providing the option to submit a Supported Document Claim to

recover more than $30.  The objection does not explain why participating in the

Settlement or opting out to individually pursue a larger or different recovery

would be insufficient to satisfy his concern.  Pumphrey's objection is overruled.

### 6.      Thomas McDonald Objection

Thomas McDonald objects to the Settlement because he "tried multip[le]

times to join the class [] action suit, but was rejected because the automated form

provided rejected me."  (Gudmundson Decl., Ex. E, McDonald Objection.)  He

argues that the "suit may have been deliberately written to exclude eligible parties." (Id.)

The claims process allowed alternative means of identifying Class Members – both by Settlement ID Number and by CenturyLink Account Number. Both Plaintiffs' Counsel and the Settlement Administrator attempted to reach McDonald by telephone and email to assist him in completing a Claim Form. (Gudmundson Decl. ¶ 6.) However, McDonald did not respond to the attempts to reach him and did not submit a claim. (Id.)

McDonald does not object to the terms of the Settlement, only that he wants to make a claim and allegedly has been unable to do so. However, he is the only person out of more than 17 million Class Members to assert that the claims process did not work, and he failed to respond to Class Counsel's attempt to assist him in making a claim. McDonald's objection is overruled.

### 7. Richard Suppes Objection

Richard Suppes objects that

the legal team is the only party that will be made whole as a result of the settlement proposed. It appears the legal team representing the class will be made substantially more than whole based on their requested expense allowance, per class representative award fee, and the "up to" 30% of settlement value terms. Approving this

> settlement would not be serving justice when the majority of the
> members of the class wi[ll] receive a proposed $30.00.

(Gudmundson Decl., Ex. F, Suppes Objection.)

As to the amount of damages per consumer, it appears that Flat Payment claimants will receive close to $45. Suppes does not address his option to pursue a Supported Document claim, which will result in approximately 60% recovery and is reasonable given the risks and costs of litigation. As to the amount of attorneys' fees and costs, their reasonableness is addressed in the attorneys' fees section of this Order. Overall, the amount of attorneys' fees and expenses requested is reasonable and results in a substantial negative multiplier, such that Plaintiffs' Counsel will not recover all fees incurred. Suppes' objection is overruled.

### 8.     Troy Poetz Objection

Troy Poetz objects that CenturyLink's DSL service provided insufficient connectivity to allow him to carry on his law practice from home during the beginning of the COVID-19 pandemic, forcing him to return to work in his office. (Gudmundson Decl., Ex. G, Poetz Objection.) He reasons: "If the several thousand customers comprising the class had the same experience as I did, the

global settlement appears to be insufficient, as does the proposed distribution to CenturyLink customers." (Id.)

Poetz asserts that he started his CenturyLink services in October 2019 and began experiences connectivity problems with the advent of the current pandemic. (Poetz Objection at 1.) Thus, his asserted overcharges largely fall outside of the Class Period, which ended on January 24, 2020. (Preliminary Approval Order ¶ 7.) During the final fairness hearing, Poetz explained that, given the issues he has faced and the size of CenturyLink's revenue, he objects that the Settlement amount is too small.

Poetz is understandably frustrated with his connectivity experience. However, given the substantial litigation risks faced by Plaintiffs, the Court concludes that this Settlement, which provides a substantial percentage of recovery on the Supported Document Claims and a non-nominal cash recovery on unsupported claims, is reasonable and adequate. Poetz had the option to pursue a Supported Document Claim or opt out and individually pursue more or different relief. Poetz's objection is overruled.

### 9.    Troy Scheffler Objection

Troy Scheffler is a frequent class action settlement objector who raises four objections to the Settlement.  (Gudmundson Decl., Ex. H, Scheffler Objection.) See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig., No. 1:17-MD-2800-TWT, 2020 WL 256132, at *42 (N.D. Ga. Mar. 17, 2020).  "The fact that the objections are asserted by a serial or 'professional objector' . . . may be relevant in determining the weight to accord the objection, as an objection carriers more credibility if asserted to benefit the class and not merely to enrich the objector or her attorney."  In re Syngenta AG MIR 162 Corn Litig., 357 F. Supp. 3d 1094, 1104 (D. Kan. 2018).  Here, Scheffler has demanded $20,000 to withdraw his objection, even though he purportedly cannot identify any uncompensated overcharge that he has suffered.  (Gudmundson Decl., Ex. I.)

First, Scheffler objects that the Settlement provides "inconsistent, arbitrarily determined remedies to class members without objective, verifiable data to determine the fairness of said remedies."  (Scheffler Objection at 3.)  In fact, the two forms of recovery under the Settlement – Flat Payment and Supported Document – are based on the $68 on average that CenturyLink reimbursed to remedy escalated and unresolved complaints during the Class Period along with a Litigation Risk Factor that was consistently applied.

27

Plaintiffs based the remedies on representations and warranties that were made in mediation and verified with data obtained through confirmatory discovery.

Second, Scheffler asserts that he cannot "determine whether Defendant CenturyLink has actually overbilled him since 2014" and has no means by which he can objectively "determine the quantity, extent, kind, and service(s) by which CenturyLink has overbilled him since 2014." (Scheffler Objection at 3.) The Court notes that Scheffler is the only individual out of a 17.2 million-person class to assert that he cannot determine if he was overbilled by CenturyLink. Moreover, Scheffler's past lawsuit against CenturyLink indicates that he is capable of determining if he was overbilled by CenturyLink. (See Gudmundson Decl., Exs. J-K.) Furthermore, the evidence indicates that Scheffler was not overcharged by CenturyLink on the relevant account, and Scheffler never raised any dispute regarding the bills that he voluntarily paid until he objected to this Settlement. (See [Docket No. 847] Lobel Decl. ¶¶ 7-11; Lobel Decl., Ex. 1.)

Third, Scheffler claims he does not know if he was overbilled because "CenturyLink maintains records going back only one year from the date of any given customer record request." (Scheffler Objection at 3.) If he had told CenturyLink that he was part of this Class or if he had contacted the Settlement

28

Administrator to request those records, he could have obtained the information he needed.  (Stinehart Decl. ¶ 24; Beckman Decl. ¶ 12.)  No other Class Member objected on the grounds that they could not obtain the documents that they needed from CenturyLink or the Settlement Administrator to submit a claim.

Fourth, Scheffler objects that  Class Counsel request "the clear, definite, and verifiable sum of 1/3 of the $15.5 million settlement, i.e., $5,166,666.67, without objective manifestation of the reasonableness of this sum, nor any verification of the reasonableness of this attorney fee[.]"  (Scheffler Objection at 3.)  During the final fairness hearing, Scheffler withdrew this portion of his objection.  In any case, Class Counsel publicly filed their motion for attorneys' fees and expenses.  Their motion fully outlined the bases for the reasonableness of the fee and expense request.

Scheffler's objections are overruled.

### 10.    Opt-Out Requests

A total of 12,325 Class Members have timely requested to opt out of the Class Settlement.  (Stinehart Decl. ¶ 18.)  Of these, 11,929 are represented by the Keller, which seeks to represent these individuals in arbitration elsewhere.  (Id.)

Neither the number of opt outs nor the reason they have determined to opt out

weigh against the fairness and reasonableness of the Settlement.

###    G.    Whether Class Members Are Treated Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to one another

because each Class Member has the opportunity to file a Flat Payment Claim and

receive an identical payment, or to file a Supported Document Claim and receive

a fixed percentage of their claimed damages, likely around 60%.

Having considered all of the relevant factors, the Court hereby finds that

the Settlement Agreement is, in all respects, fair, adequate, and reasonable, and

therefore approves it.

## IV.    AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

###    A.    Requested Award

Class Counsel have applied for a fee of $6,166,667 million, reimbursement

of $263,671.46 in litigation expenses, and service awards of $2,500 to 34

individuals.

###    B.    Standard for Approval of Attorneys' Fees and Costs

The district court has discretion to use either a lodestar or
percentage-of-the-fund method in determining an appropriate
recovery, and the ultimate reasonableness of the award is evaluated
by considering relevant factors from the twelve factors listed in

<u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 719–20 (5th Cir. 1974).

<u>Rawa v. Monsanto Co.</u>, 934 F.3d 862, 870 (8th Cir. 2019) (citations omitted).  The Court must "provid[e] a concise but clear explanation of its reasons for the fee award," and the Eighth Circuit "give[s] substantial deference to a district court's determinations, in light of the district court's superior understanding of the litigation."  <u>Id.</u> (citations omitted).  "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case."  <u>Keil v. Lopez</u>, 862 F.3d 685, 701 (8th Cir. 2017) (citation omitted).

### C.    Percentage-of-the-Benefit Method

#### 1.    Percentage-of-the-Benefit Standard

"[T]he 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation."  <u>Keil</u>, 862 F.3d at 701 (citation omitted).   The Court uses the <u>Johnson</u> factors to determine the reasonableness of the fee request:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work

in the community; (6) Whether the fee is fixed or contingent; (7)
Time limitations imposed by the client or the circumstances; (8) The
amount involved and the results obtained; (9) The experience,
reputation, and ability of the attorneys; (10) The undesirability of the
case; (11) The nature and length of the professional relationship with
the client; and (12) Awards in similar cases.

In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d 980, 993

(D. Minn. 2005) (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-

19 (5th Cir. 1974)).  Because "not all of the individual Johnson factors will apply

in every case, [] the court has wide discretion as to which factors to apply and the

relative weight to assign to each."  Id.

Here, the total value of the monetary benefits secured by Class Counsel is

$19 million, consisting of $15.5 million in the Primary Fund and $3.5 million in

the Notice and Administration Fund.  "[T]he rule in this circuit is that a district

court may include fund administration costs as part of the 'benefit' when

calculating the percentage-of-the-benefit fee amount."  Keil, 862 F.3d at 704

(citation omitted).  Thus, the fee request of $6,166,667 is 32.5% of the total value

of the Settlement.

### 2.    Benefit Conferred on the Class

Plaintiffs' Counsel obtained $19 million in monetary relief and significant

non-monetary relief targeting CenturyLink's billing and sales practices.  The

Primary Fund is non-reversionary, so the entire fund, after attorneys' fees, expenses, and service awards, will be distributed to Class Members who submit claim forms, and, if the claims made are less than the amount in the Primary Fund, which will be the case here, the Class Members' payments will be increased through the Pro Rata Multiplier. The benefit provided to the Class was significant. This settlement provided a non-nominal monetary award to every claimant, with an approximate minimum award of $45 to those who provided no documentary substantiation for their claims. It also provided approximately 60 cents on the dollar for every document-supported claim, which is a significant percentage.

### 3.    Risks to which Plaintiffs' Counsel Were Exposed

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d at 994. And "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." Mashburn v. Nat'l Healthcare, Inc., 684 F. Supp. 679, 687 (M.D. Ala. 1988). "The theory behind attorneys' fees awards in class actions

is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." In re Monosodium Glutamate Antitrust Litig., No. CIV. 00MDL1328PAM, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003).

Here, Plaintiffs' Counsel faced a significant risk of earning no fees because CenturyLink had multiple strong defenses, including arguments regarding piercing the corporate veil, class-action waivers, and individual arbitration agreements, that could have wiped out the entire case. If the case had survived to the class certification stage, there would have been strong arguments against class certification with regard to manageability concerns that do not exist with the current Settlement. If the case continued in litigation, Plaintiffs' Counsel would have had to expend considerable additional resources on discovery, expert analysis, a highly contested motion for class certification, motions for summary judgment, and trial.

### 4.    Difficulty and Novelty of the Legal and Factual Issues

Plaintiffs' Counsel faced challenging legal and factual issues in pursuing nationwide claims and relief. CenturyLink mounted a strong defense regarding, veil piercing, class-action waivers, and arbitration agreements. These were

complex issues that required intensive discovery and briefing. The settlement

negotiations were also involved, consisting of extensive arm's length

negotiations and confirmatory discovery. Plaintiffs' Counsel also had to address

complex issues regarding Keller's clients' attempt to stay this entire litigation and

pursue individual arbitration.

### 5.    Skill of the Lawyers

Plaintiffs' Counsel has significant complex and class action litigation

experience. They expended extensive time and money pursuing discovery and

briefing several dispositive and non-dispositive motions. Despite significant

pending motions, they managed to negotiate substantial classwide relief and to

verify the reasonableness of that settlement through months of confirmatory

discovery. Plaintiffs' Counsel displayed skill, tenacity, and professionalism in

responding to a flurry of substantial and complex motions, including the motion

to compel arbitration, the motion to dismiss, and two different motions from

Keller's clients with the potential to derail the Settlement.

### 6.    Time and Labor Involved

Plaintiffs' Counsel invested significant time and effort responding to the

initial motions, negotiating a settlement, and engaging in confirmatory

discovery.  However, by negotiating a settlement at this point in the litigation,
they avoided the astronomical expenses and resources that would have been
spent if the case continued for years as they pursued and responded to extensive
fact and expert discovery, class certification, summary judgment, and trial.

### 7.     Reaction of the Class

Almost all of the 17.2 million Class Members received notice of the
Settlement, yet only 8 Class Members objected and only 0.07% of the Class opted
out.  The vast majority of those who opted out are represented by Keller and seek
to resolve their claims in individual arbitration.  The reaction of the Class shows
little dissatisfaction with the Settlement.

Settlement Class Members have submitted 115,240 timely Flat Payment
claims and 2,213 timely Supported Document claims.  Given the historically low
response rate in consumer class actions and the evidence in confirmatory
discovery that likely only a single-digit percentage of the Class possesses
uncompensated claims, these statistics show that the Class supports the
Settlement.

### 8.    Comparison of Awards in Similar Cases

"[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d at 998 (gathering cases). Thus, the 32.5% request by Plaintiffs' Counsel is comparable.

Overall, the Court concludes that this is an excellent Settlement that provides Class Members with tangible monetary benefits, in addition to ensuring that CenturyLink is less likely to overbill consumers in the future. Given the difficulty and risks involved in this litigation, the result is a testament to the skill and dedication of Plaintiffs' Counsel and serves as an example that MDLs and consumer class actions can provide meaningful relief to consumers.

### D.    Lodestar Method

When the Court uses the percentage-of-the-benefit method, it is not required to cross-check it against the lodestar method. Keil, 862 F.3d at 701. However, using the lodestar method as a cross-check, the fee request is roughly 2/3 of the attorneys' fees and expenses incurred through June 2020, using the capped hourly rates, which appear reasonable for this District, multiplied by the amount of hours expended. Substantial attorney time has been spent since that

date in relation to the appeal pending before the Eighth Circuit and a motion to compel arbitration by Keller's clients.

### E.    Expenses

Plaintiffs' Counsel request that the Court additionally award reimbursement of reasonable costs and expenses in the amount of $263,671.46. (Gudmundson Decl. ¶ 84; [Docket No. 855] Gudmundson Letter and Exhibit.)

"It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." Krueger v. Ameriprise Fin., Inc., No. 11-CV-2781 SRN/JSM, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015).

The Court has reviewed Plaintiffs' Counsel's detailed expense reports and finds that the requested expenses are "related and necessary to the prosecution of this type of litigation and are properly recovered by counsel who prosecute cases on a contingent basis." In re Zurn Pex Plumbing Prod. Liab. Litig., No. 08-MDL-1958 ADM/AJB, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013). The Court further notes that, because counsel had no guarantee that these expenses would ever be reimbursed, Plaintiffs' Counsel had the incentive to keep the amounts

reasonable.  See, e.g., Krueger, 2015 WL 4246879, at *3.  The Court concludes that

the expenses requested are reasonable and necessary and grants Plaintiffs'

Counsel's request for reimbursement.

### F.    Class Representative Service Awards

Plaintiffs' Counsel seek class representative service awards of $2,500 per

person for each of the 33 Plaintiffs named in the CCAC and for Frank Carrillo,

who served as a class representative in the Florida action Carrillo v. CenturyLink

Inc., 17-cv-1309 (M.D. Fla.).

"Courts [] routinely approve such awards for class representatives who

expend special efforts that redound to the benefit of absent class members."

White v. Nat'l Football League, 822 F. Supp. 1389, 1406 (D. Minn. 1993)

(gathering cases).  See also  Khoday v. Symantec Corp., No. 11-CV-180

(JRT/TNL), 2016 WL 1637039, at *12 (D. Minn. Apr. 5, 2016) ("Courts in this

District routinely grant service awards for named plaintiffs."), report and

recommendation adopted, No. 11-CV-0180 (JRT/TNL), 2016 WL 1626836 (D.

Minn. Apr. 22, 2016), aff'd sub nom. Caligiuri v. Symantec Corp., 855 F.3d 860

(8th Cir. 2017).

> [R]elevant factors in deciding whether incentive award to named
> plaintiff is warranted include actions plaintiff took to protect class's
> interests, degree to which class has benefitted from those actions,

39

and amount of time and effort plaintiff expended in pursuing litigation.

In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (citing Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Class Representatives participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media. See Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011). They spent considerable time and effort in assisting Plaintiffs' Counsel by searching their records to provide relevant documents and information responsive to CenturyLink's 730 written discovery requests to all named Plaintiffs; consulting with Plaintiffs' Counsel throughout the litigation; in many cases, preparing for and sitting for depositions; advocating on behalf of the class members; and assisting Plaintiffs' Counsel with negotiating a favorable settlement. (Gudmundson Decl. ¶¶ 80-81.) The Court finds the class representative service awards of $2,500 per person to be reasonable and justified.

## V.    CERTIFICATION OF THE SETTLEMENT CLASS

### A.    Standard for Certification of a Settlement Class

Federal Rule of Civil Procedure 23 governs certification of a settlement

class.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620-21 (1997).  For the

Court to grant class certification, Plaintiffs must first show that

> (1) the class is so numerous that joinder of all members is
> impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of
> the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).

Here, Plaintiffs seek certification as a Rule 23(b)(3) class.  Class certification

under Federal Rule of Civil Procedure 23(b)(3) is appropriate when "the court

finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the

controversy."  A Rule 23(b)(3) class preserves a class member's ability to opt out

of the settlement insofar as the class member's damages claim is concerned.  Fed.

R. Civ. P. 23(c)(3).  Moreover, when "[c]onfronted with a request for settlement-

only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems." <u>Amchem Prods., Inc.</u>, 521 U.S. at 620.

## B.  Rule 23(a)

### 1.  Numerosity

Numerosity is met when the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of approximately 17.2 million current and former CenturyLink customers.  Joinder of all members is clearly impracticable.  Settlement Class Members are identifiable using CenturyLink service records, which contain the service address for all current and former customers.  Notice was directly sent by email or U.S. Mail to nearly all 17.2 million Class Members using CenturyLink records or other means.  (Stinehart Decl. ¶ 17; Dawson Decl. ¶¶ 5–6; Beckman Decl. ¶¶ 4–6.)  Thus, numerosity has been met.

### 2.  Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class."

Settlement Class Members are or were CenturyLink customers who paid it for some combination of internet, television, and local or long-distance telephone services.  Plaintiffs, on behalf of the Settlement Class, commonly asserted that

CenturyLink implemented deceptive companywide sales and billing practices that led to the systematic overcharging of customers.  Overall, Class Members commonly assert that CenturyLink knowingly used centralized systems and policies that resulted in customers overpaying for services and was unjustly enriched as a result.  Commonality has been met.

### 3.    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.  Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citations omitted).  "Moreover, differences in the claimed damages or the availability of certain defenses do not defeat typicality, so long as the class claims are generally based on the same legal or remedial theory."  Briles v. Tiburon Fin., LLC, No. 8:15CV241, 2016 WL 4094866, at *3 (D. Neb. Aug. 1, 2016) (citation omitted).

Plaintiffs' and the Settlement Class's claims result from the same conduct: CenturyLink's alleged centralized, deceptive sales and billing practices. They each claim that they were overbilled due to billing systems, processes, and policies implemented centrally by CenturyLink. Typicality has been met.

### 4.    Adequacy

The named Plaintiffs are adequate representatives if they "have common interests with the members of the class, and . . . will vigorously prosecute the interests of the class through qualified counsel." Paxton v. Union Nat. Bank, 688 F.2d 552, 562–63 (8th Cir. 1982).

Plaintiffs' interests are aligned with the Class. All are or were CenturyLink customers during the Class Period, when CenturyLink allegedly utilized central sales and billing policies and systems that led it to knowingly overbill customers for services. They share a common interest in being compensated for CenturyLink's alleged billing improprieties and preventing illicit sales practices from reoccurring. Plaintiffs have vigorously prosecuted the interests of the Settlement Class through qualified and experienced counsel and have successfully obtained substantial relief for injuries due to unreimbursed overcharges, regardless of what caused them. Adequacy has been met.

## C.    Rule 23(b)(3)

Rule 23(b)(3) allows a class action when "the court finds that the questions

of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."

The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the
prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the
controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of
the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).


## 1.    Predominance

At the core of Rule 23(b)(3)'s predominance requirement is the issue
of whether the defendant's liability to all plaintiffs may be
established with common evidence. . . .  If the same evidence will
suffice for each member to make a prima facie showing, then it
becomes a common question.

Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 998 (8th Cir. 2016)

(citation omitted).

45

Common issues predominate because each Settlement Class Member would rely on common factual evidence to establish CenturyLink's liability. Each Settlement Class Member's claim is based on common evidence to show that the systematic billing practices, processes, and policies used by each Operating Company were under CenturyLink's creation and control. Additionally, the Settlement Agreement resolves the potentially individual issues of damages and causation. See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 242 (2d Cir. 2012) ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."). The Flat Payment Claim resolves the causation issue because Claimants do not need to prove the amount or cause of their overpayment; they merely need to select the type of overcharge that they assert to have paid and aver that they have not already been compensated for that overcharge. The Supported Document Claim allows Claimants to pursue a higher recovery by providing documents to substantiate the specifics of their overcharges. The Settlement Agreement also eliminates issues of manageability and variations in state law.

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.

46

Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 619–20 (1997) (citation omitted).

Here, the Settlement benefits the Class by resolving otherwise individual

defenses, such as the enforceability of arbitration provisions and class-action

waivers, on a classwide basis.

### 2.    Superiority

A class action is the superior method to resolve these claims.  "Many

opinions . . . give consumer fraud as an example of a claim for which class

treatment is appropriate."  In re Mex. Money Transfer Litig., 267 F.3d 743, 747

(7th Cir. 2001).  The Settlement Class contains millions of current and former

CenturyLink customers, thousands of whom suffered financial injuries; however,

in most cases, individually, the injury incurred is too small to warrant individual

action against CenturyLink.  (See Gudmundson Decl. in Support of Preliminary

Approval ¶ 8(i) (providing that, on average, CenturyLink provided $68 to

remedy escalated and unresolved complaints over the Class Period).)

Adjudication through a class action is superior because, without a class action,

the Settlement Class may have no other realistic relief.

### D.    Form of the Notices and Claim Forms

### 1.    Standard for Class Notice

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must satisfy the "broad reasonableness standards imposed by due process." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999) (citation omitted). The "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. (citation omitted).

### 2.    Analysis of Class Notice

As the Court found in its Preliminary Approval Order, the proposed notice plan complied with Rule 23 and due process and was intended to adequately apprise Class Members of the Settlement. Now the notice plan has been successfully implemented. Direct notice reached almost all of CenturyLink's current customers who are Class Members and 94.99% of the Class Members who are former CenturyLink customers. (Dawson Decl. ¶¶ 5–6; Beckman Decl.

¶¶ 4–6; Stinehart Decl. ¶ 17.)  Additionally, the Settlement Administrator

reported more than half a million unique hits on its website for this Settlement

(Stinehart Decl. ¶ 21), almost 50,000 calls to its toll-free number (id. ¶ 22), and 4.9

million gross impressions of notice through web advertisements based on

searches on Google (Wheatman Decl. ¶ 15).

The response and claims rates from the Class members are also within the

acceptable range for Final Approval.  Approximately 120,000 claims were filed

out of a Class of 17.2 million.  The claims rate itself "does not dictate whether the

notice provided was the best notice practicable under the circumstances" as

required by Rule 23.  Pollard v. Remington Arms Co., LLC, 320 F.R.D. 198, 215

(W.D. Mo. 2017), aff'd 896 F.3d 900 (8th Cir. 2018).  See also Keil v. Lopez, 862

F.3d 685, 696-97 (8th Cir. 2017) (noting that although the vast majority of the class

did not submit a claim and exercise their right to a share of the settlement fund,

"their opportunity to do so was a benefit to them" along with the additional

injunctive relief).

Moreover, confirmatory discovery showed that only a small percentage of

the Class suffered damages for which they were not compensated.   (See [Docket

No. 469] Gudmundson Decl. in Support of Preliminary Approval ¶ 8(f) (averring

49

that CenturyLink's Consumer Advocacy Group ("CAG") received escalated complaints from less than 1% of CenturyLink's customers over the Class Period); ¶ 8(h) (averring that CAG provided $2.5 million in refunds to customers); id. ¶ 8(j) (averring other CenturyLink customer service agents issued tens of millions of dollars to customers).) Thus, the response rate is acceptable.

Overall, the Court concludes that the class notification procedures were reasonably calculated to notify interested parties of the settlement and allow them the opportunity to object.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards [Docket No. 731] and Plaintiffs' Motion for Final Approval of Class Action Settlement [Docket No. 832] are **GRANTED**.

2. **Class Members**. The Class Members are defined as: All persons or entities in the United States who are identified by CenturyLink as a residential or small business customer and who, during the Class Period, had an account for local or long distance telephone, internet, or television services with one or more of the Operating Companies. Excluded from the class are the Court, the officers and directors of CenturyLink, Inc. or any of the Operating Companies, and persons who timely and validly request exclusion from the Settlement Class. The Class Period is January 1, 2014 to January 24, 2020.

3. **Binding Effect of Order**.  This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Settlement Class Members, including those who did not properly request exclusion under paragraph 6 of the Preliminary Approval Order.  This order does not bind persons who filed timely and valid requests for exclusion.  Attached as Exhibit A is a list of persons who properly requested to be excluded from the settlement.

4. **Release**.  Settlement Class Representatives and all Settlement Class Members who did not properly request exclusion are: (1) deemed to have released and discharged CenturyLink from all claims arising out of or asserted in the Consumer MDL Action and the Consumer Actions and all claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims.  The full terms of the release described in this paragraph are set forth in Section 2.3 of the Settlement Agreement and are specifically incorporated herein by this reference.

5. **Class Relief**.  CenturyLink is directed to provide the Settlement Funds to the Settlement Administrator according to the terms and timeline stated in the Settlement Agreement.  The Settlement Administrator is further directed to issue payments to each Settlement Class Member who submitted a valid and timely Claim Form (i.e., each Authorized Claimant) according to the terms and timeline stated in the Settlement Agreement.

6. **Extension of Time for Claims to be Considered Timely**. At the request of the parties at the November 19, 2020 final fairness hearing and for good cause shown, claims received by the Settlement Administrator that were postmarked within 14 days from their original deadline for submission will be considered timely claims.

7. **Attorneys' Fees, Costs, and Expenses**.  Plaintiffs' Counsel are awarded $6,166,667.00 in attorneys' fees and $263,671.46 in costs and expenses.  Payment shall be made pursuant to the manner and timeline stated in the Settlement Agreement.

8. **Individual Settlement Award**.  Settlement Class Representatives and Plaintiff Frank Carrillo are awarded $2,500.00 (each) as an individual settlement award.  Payment shall be made pursuant to the manner and timeline stated in the Settlement Agreement.

9. **Miscellaneous**.  No person or entity shall have any claim against CenturyLink, CenturyLink's counsel, Settlement Class Representatives, the Settlement Class Members, Settlement Class Counsel, Plaintiffs' Counsel or the Settlement Administrator based on distributions and payments made in accordance with the Agreement.

10. **Court's Jurisdiction**.  Pursuant to the Parties' request, the Court will retain jurisdiction over this action and the parties until final performance of the Settlement Agreement.


Dated:  December 4, 2020                    s/ Michael J. Davis

                                           Michael J. Davis
                                           United States District Court